CRAIN, Judge.
This is an appeal from the judgment of the trial court dismissing plaintiff’s claim for workmen’s compensation benefits.
In oral reasons for judgment the trial court stated that Honoré (appellant) had failed to prove by a preponderance of the evidence that his physical condition was the result of a work related accident. Honoré appeals, alleging that the trial court erred (1) in applying a higher standard of proof than required by law and (2) in relying *740 upon appellant’s delayed report of the injury to his employer (Ryder).
FACTS
Plaintiff suffers from a herniated disc. He alleges that his physical condition was caused by an accident which occurred in early April, 1980, at the Ryder terminal during the course and scope of his employment.
On May 18, 1980, Honoré sought treatment at the emergency room at Our Lady of the Lake Hospital in Baton Rouge for pain in his knee. He was examined at the emergency room by Dr. Ernest James Mencer, a general surgeon, who made a diagnosis of intermittent claudication. Dr. Mencer referred plaintiff to Dr. Terry Jones, a vascular surgeon. After several visits, Dr. Jones determined that plaintiffs complaints were skeletal in nature and referred plaintiff to Dr. Jack Loupe, orthopedic surgeon. As the result of a myelogram which was performed on plaintiff, Dr. Loupe determined that plaintiff suffered from a herniated disc which was discernible from the myelogram. It was Dr. Loupe’s opinion that plaintiff was disabled from gainful employment compatible with his education and work qualifications. He has been unable to work since June 13, 1980.
Plaintiff is a member of Teamster’s Local Number Five and has a hospitalization insurance policy through the union which covers non job related injuries. He has not filed a claim with his group insurer. On July 23, 1980, plaintiff and Dennis Pedes-cleaux, business agent for Teamsters Local Number Five, met at the Ryder terminal with Robert Tucker, terminal manager, to file a written report of the accident. He filed for worker’s compensation benefits but the claim was denied. He is presently receiving social security disability payments.
BURDEN OF PROOF
A qualified employee who becomes medically disabled due to an accident which arises out of and is within the scope of his employment is entitled to worker’s compensation benefits. La.R.S. 23:1031. The plaintiff in a worker’s compensation case must prove his claim by a preponderance of the evidence. Montgomery v. Delta Concrete Products Co., Inc., 290 So.2d 769 (La.App. 1st Cir.1974), writ refused, 294 So.2d 823 (La.1974).
Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s ease must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture.
Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). The testimony of claimant alone may be sufficient to establish the occurrence of a work related accident when corroborated by credible evidence from the record. White v. Freeport Chemical Co., 319 So.2d 563 (La.App. 4th Cir.1975), writ denied, 323 So.2d 132 (La.1975).
Honoré testified that the accident occurred one morning during the first week or so of April, 1980. Pursuant to the instructions of his supervisor, Jesse Bishop, Honoré backed a truck to the dock. In the process of dismounting from the cab of the truck plaintiff slipped and fell to the ground and landed on his back. Andy Al-berez, a mechanic employed by Ryder, allegedly witnessed the accident. Plaintiff stated that he verbally reported the accident to Bishop on the day the accident occurred. Bishop allegedly inquired whether plaintiff was injured badly enough to make a written report. Since plaintiff was only experiencing slight discomfort in the left knee at that time, no written report was made.
*741 Plaintiff further testified that on May 18, 1980, when he first sought treatment for the injury, he was aware that his condition was directly attributable to the work related accident. He related this history of trauma to the emergency room personnel and to Drs. Mencer, Jones and Loupe upon his first visit to each.
Although the jurisprudence is settled that an employee may establish the occurrence of the job related accident by his testimony alone “the employee’s testimony must be corroborated by attending facts and circumstances and the record must be free of evidence which impeaches his testimony.” Blacher v. Matlack, Inc., 349 So.2d 916, 918 (La.App. 1st Cir.1977), writ denied, 351 So.2d 166 (La.1977). The trial court obviously found that the testimony and evidence did not corroborate plaintiffs testimony in regard to the occurrence of the job related accident. A review of the record reveals the following factors which are inconsistent with or cast suspicion on plaintiffs testimony:
1) The emergency room record of May 18, 1980, indicates that plaintiff complained of suffering with knee pain for one week prior to May 18, 1980. At trial plaintiff testified that knee pain began early in April, 1980. The emergency room record specifies that plaintiff gave no history of trauma which may have caused the knee pain.
2) Dr. Jack Loupe testified by deposition that plaintiff did not initially give a history of trauma to the back or knee. It was not until several visits later that plaintiff mentioned a work-related accident.
3) Dr. Ernest J. Mencer testified by deposition as follows:
A. I don’t recall specifically questioning him about whether he injured the knee. But had injury to the knee been a prominent part of the history, then my impression would certainly have not been intermittent claudication.
Q. And of course the hospital record does indicate that he said specifically no history of trauma?
A. That’s what the record indicates.
4) Anthony J. Alberez allegedly witnessed the accident. He testified that he saw plaintiff back the truck to a fence and fall to the ground while dismounting from the cab. The truck was not at a loading dock as alleged by plaintiff. In a signed statement dated August 18, 1980, Alberez described the accident as follows: “About two months ago I saw him climb onto his tractor to clean his windshield and etc. prior to leaving for delivery. I saw him slip off the fender and land on his feet.”
5) Bishop testified that he could not recall plaintiff’s report of an accident in April, 1980.
6) Tucker testified that on July 23, 1980, he met with Pedescleaux and plaintiff at the Ryder terminal. At that meeting Tucker was allegedly informed by Pedescleaux that plaintiff had been injured in a job related accident in May, 1980. He was told that the accident had been verbally reported to Bishop on the date of its occurrence. Tucker allegedly then told plaintiff that Bishop was not employed by Ryder in May, 1980. As a result of the July 23, 1980, meeting Tucker made out an employer’s report of the injury on July 24, 1980, which lists May, 1980, as the date of the accident. Plaintiff’s employee’s report of the accident, dated July 28, 1980, gives the time and circumstances but not the date of the injury.
7) Pedescleaux testified that after the July 23, 1980, meeting at the Ryder terminal between Pedescleaux, plaintiff and Tucker, Pedescleaux immediately sought out and spoke with Bishop who was on the dock at the Ryder terminal. Bishop allegedly acknowledged to Pedescleaux that Honoré had reported the accident to Bishop. However, Bishop was no longer employed by Ryder on July 23, 1980.
8) Plaintiff testified that both Bishop and William D. Lynch (Bishop’s replacement) were present on the Ryder premises when the accident occurred. He stated that Bishop was “breaking in” Lynch as his replacement. Lynch testified that he did *742 not begin work at Ryder until April 21, 1980, and Bishop was no longer working for Ryder at that time. In addition, he stated that he had not been trained for his new position by Bishop.
9) Plaintiff testified regarding the payment of his medical bills.
Q. Now, at the time you first went to the hospital, didn’t you report that under your group medical pay? Your Teamster group? Didn’t you report that as a bill to be covered by that?
A. No, because I, I felt sure I got hurt on the job. I didn’t want to report on the Teamsters when I was hurt on the job.
However, the emergency room record lists plaintiff’s teamster group insurance company as his insurer.
After review of the record we find no manifest error in the holding of the trial court that plaintiff failed to prove the occurrence of a work related accident by a preponderance of the evidence.
RELIANCE ON DELAYED NOTICE TO EMPLOYER
Appellant alleges that the trial court erroneously relied upon plaintiff’s late notice to Ryder in ruling that the injury was not employment-connected.
The late notice to Ryder was not disposi-tive of this case. The testimony relative to the alleged notice to Bishop in April, 1980, and the notice to Tucker in July, 1980, were examples of the many inconsistencies replete throughout this record. This assignment of error is without merit.
Since we have affirmed the judgment of the trial court on other grounds we need not address the issue raised by Ryder of the prescription of plaintiff’s worker’s compensation claim. Accordingly, we affirm the judgment of the trial court. Appellant is to pay the costs of this appeal.
AFFIRMED.